IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| TINA FRANK, | : | No. 3:09cv596 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| BRIAN W. SMITH, | : | |
| ANTHONY HERZOG, | : | |
| WEDELL KAY, | : | |
| WAYNE COUNTY, | : | |
| CRAIG CHALMERS, and | : | |
| MILO HAMBY, | : | |
| Defendants | : | |

## MEMORANDUM

Before the court is defendants' motion to dismiss plaintiffs' amended complaint. Having been fully briefed, the matter is ripe for disposition.

**Background**

This case arises out of plaintiff's employment as a Corrections Officer at the Wayne County (Pa.) Correctional Facility ("WCCF" or "The Prison"). (See Amended Complaint (hereinafter "Complt.") (Doc. 18)). Plaintiff began working at the prison on Decmeber 12, 2006. (Id. at ¶ 6). When hired, plaintiff was one of only two female correctional officers at the facility. (Id.). She did well in her job, being offered a promotion three months after she started. (Id. at ¶ 7).

At the same time, however, plaintiff suffered continuing abuse and harassment from her shift supervisor, Defendant Milo Hamby, from her first day on the job. (Id.

at ¶ 8). Others joined in this harassment. (Id.). On plaintiff's first day at work, Defendant Hamby announced over a loadspeaker that plaintiff was a "hot female." (Id. at ¶ 9). This statement was heard by male co-workers, supervisors and prison inmates. (Id. at ¶ 9). This event caused plaintiff great embarrassment and undermined her authority as a prison officer. (Id.).

The alleged harrassment took other forms as well. (Id. at ¶ 10). Hamby often made false reports and accusations about plaintiff, including an allegation that Plaintiff had misplaced an inmates jewelry. (Id.). He aimed different rules at her than her male coworkers. (Id. at ¶ 11). Plaintiff was prohibited from eating lunch. (Id.). Her reports on inmates–properly prepared–were not accepted. (Id.). Reports by male coworkers prepared in the same manner were accepted. (Id.). Hamby undermined plaintiff's authority by countermanding her orders to inmates, and punished her when she complained about his behavior to superiors. (Id. at ¶ 12). Plaintiff also failed to receive the protection from inmates accorded other, male, officers. (Id. at ¶ 14). Prison policy was to place disobedient inmates in lock-up, yet an inmate who threatened plaintiff did not suffer such consequences. (Id.). In early February 2007, plaintiff found a picture of herself at work that had the phrase "Gypsy Porch Monkey" scrawled across it. (Id. at ¶ 15). Male corrections officers often discussed plaintiff with inmates, discussing both her work performance and personal life. (Id. at ¶ 26). One corrections officer falsely told inmates that he was dating plaintiff. (Id. at ¶ 27). This officer also made sexually explicit gestures that simulated copulation towards plaintiff in the presence of other officers and inmates.

2

(Id. at ¶ 33). An inmate told plaintiff that other correctional officers had told them that plaintiff had performed sexual acts on others to be allowed to wear the sweater she wore to work. (Id. at ¶ 35). Plaintiff alleges that such behavior was humiliating and degrading, and not mere horseplay. (Id. at ¶ 34).

Plaintiff alleges that this disparate treatment embarrassed her and undermined her authority as a corrections officer. (Id. at ¶ 16). This treatment also placed her safety in danger, as inmates were aware that they could act aggressively towards her without suffering any consequences. (Id.). The behavior of Defendant Hamby and other male corrections officers also trapped plaintiff alone in the cell block, unable to use the restroom or have access to beverages for long periods of time. (Id. at ¶ 17). Male coworkers did not face such restrictions on their movement. (Id.) Hamby also frequently forced plaintiff to work alone in dangerous cell blocks, including one block populated by a prisoner who had attacked her. (Id. at ¶ 18). Male corrections officers, by contrast, were allowed to sit behind a desk, away from the cell block. (Id.). Plaintiff was also forced to work split shifts and double shifts that male officers were not. (Id. at ¶ 19).

Plaintiff also contends that Hamby and other supervisors retaliated against her when she complained of their behavior by giving her less desirable work hours, changing the conditions of her workplace to make them less safe, calling family members to harass them and generally behaving in a hostile manner. (Id. at ¶¶ 30-32, 36-42, 47-48, 50). This combination of harassment and retaliation turned plaintiff into "'an emotional wreck.'" (Id. at ¶ 54). This instability left her unable to supervise

3

inmates and forced her to take time off from work.  (Id.).  On June 18, 2007, plaintiff, fearing that she would be fired and feeling that she had no other options, submitted her resignation.  (Id. at ¶ 60).  These events, plaintiff claims, "were unwelcome, humiliating, severe and/or pervasive, frequent, relentless, based on sex and [because of] protected activity.  (Id. at ¶ 67).  They caused plaintiff "to obtain both medical and psychiatric advice, medication, obtain ongoing counseling, subjecting her to therapy and deep depression, and depriving her of further substantially equal job opportunities."  (Id.).

Plaintiff filed a complaint in this court on April 1, 2009.  (See Doc. 1).  Defendants filed a motion to dismiss that complaint on July 10, 2009.  (See Doc. 14).  The court denied the defendants' motion as moot after plaintiff filed her amended complaint.  (See Doc. 20).  The amended complaint raises nine causes of action.  Count I alleges disparate treatment sexual harassment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.  Count II raises a claim of strict liability sexual harassment pursuant to the same statute.  Count III is a hostile environment Title VII sexual harassment claim.  Count IV alleges retaliation for complaining about Title VII violations.  Count V claims retaliatory harassment and strict liability pursuant to Title VII.   Count VI makes a retaliatory harassment claim based on a hostile work environment.  Count VII is a First Amendment retaliation claim, brought pursuant to 42 U.S.C. § 1983.  Count VIII alleges an equal protection violation constituted by harassment, privacy and retaliation.  Count IX is state-law claim for intentional infliction of emotional distress.  All claims are aimed in part against the defendants in

4

their official capacities. The defendants then filed the instant motion to dismiss. (Doc. 21). The motion seeks to dismiss the claims against the individual defendants in their official capacities and the intentional infliction of emotional distress claim. The parties then briefed the issues, bringing the case to its present posture.

**Jurisdiction**

Because this case raises claims under Title VII and Section 1983, this court has jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court has supplemental jurisdiction over the plaintiff's state-law claim pursuant to 28 U.S.C. § 1367.

**Legal Standard**

Defendants have filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). When a defendant files such a motion, all well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether "under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." Colburn v. Upper Darby Township, 838 F.2d 663, 665-66 (3d Cir. 1988) (citing Estate of Bailey by Oare v. County of York, 768 F.3d 503, 506 (3d Cir. 1985), (quoting Helstoski v. Goldstein, 552 F.2d 564, 565 (3d Cir. 1977) (per curium)). The court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted). The court does not have to accept legal

5

conclusions or unwarranted factual inferences.  See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

The federal rules require only that plaintiff provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,'" a standard which "does not require 'detailed factual allegations,'" but a plaintiff must make "'a showing, rather than a blanket assertion, of entitlement to relief' that rises 'above the speculative level.'" McTernan v. City of York, 564 F.3d 636, 646 (3d Cir. 2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)).  The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).  Such "facial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." Id.

**Discussion**

Defendants' motion to dismiss states two grounds for dismissal.  The court will address each in turn.

### i. Individual Defendants in their Official Capacities

The defendants argue that the claims against the individual defendants in their official capacities should be dismissed, as those claims are duplicative of claims against the County.  The court agrees.  "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer

6

is an agent.'" Kentucky v. Graham, 473 U.S. 159, 165 (1985) (quoting Monell, 436 U.S. at 690). Such suits are, "in all respects other than name, to be treated as a suit against the entity. Id. at 166. They are "*not* a suit against the official personally, for the real party in interest is the entity." Id. (emphasis in original). Therefore, "'[w]here a suit is brought against a public official in his [or her] official capacity, the suit is treated as if [it] were brought against the governmental entity of which he [or she] is an official.'" McGreevy v. Stroup, 413 F.3d 359, 369 (3d Cir. 2005) (citation omitted). As such, the court will grant the defendants motion and dismiss any claims brought against the defendants in their official capacities. Though the complaint is not a model of pleading, the court interprets it as bringing claims against these defendants in their individual capacities and will not dismiss them from the case entirely.

### ii. Intentional Infliction of Emotional Distress

The defendants also argue that plaintiffs' claim for intentional infliction of emotional distress should be dismissed both against the county and against the individual defendants. The parties agree that Wayne County is immune from tort liability under Pennsylvania law, and the court will grant the motion as it relates to the County.

In Pennsylvania, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Taylor v. Albert Einstein Med. Ctr., 754 A.2d 650, 652 (Pa. 2000). Such tortious conduct "'must be so outrageous in character, and so extreme in degree, as

7

to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" Hoy v. Angelone, 720 A.2d 745, 753 (Pa. 1998) (quoting Buczek v. First National Bank of Mifflintown, 531 A.2d 1122, 1125 (Pa. Super. Ct. 1987)). Under this standard, "[i]t has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." Daughen v. Fox, 539 A.2d 858, 861 (Pa. Super. Ct. 1988) (quoting RESTATEMENT OF TORTS (2d) § 46 Comment (d)). Pennsylvania courts have held that "it is unwise and unnecessary to permit recovery to be predicated on an inference based on the defendant's 'outrageousness' without expert medical confirmation that the plaintiff suffered the claimed distress." Kazatsky v. King David Memorial Park, Inc., 527 A.2d 988, 995 (Pa. 1987). Thus, "to state a claim under which relief can be granted for the tort of intentional infliction of emotional distress, the plaintiffs must allege physical injury." Hart v. O'Malley, 647 A.2d 542, 554 (Pa. Super. Ct. 1994).

Defendants insist that plaintiff has not pled such physical injury. The court disagrees. Plaintiff alleges that the harassment she experienced at the prison created an "unbearably high" level of "stress. (Complt. at ¶ 54). She "felt too emotionally unstable . . . to supervise inmates and sought some time off." (Id.). Moreover, plaintiff alleges that she suffered "severe emotional distress, causing her to obtain both medical and psychiatric advice, medication, obtain ongoing

8

counseling, subjecting her to therapy and deep depression." (Id. at ¶ 67). The argument here is over the extent of plaintiff's injuries from defendant's conduct, not whether plaintiff has pled extreme and outrageous behavior. While the defendants are correct in arguing that plaintiff could not prevail unless she shows that she suffered physical injury as a result of defendants' conduct, the plaintiff has alleged that she suffered injuries that required medical treatment. The court finds it plausible, based on these allegations, that plaintiff suffered a physical injury and will not dismiss the claim at this early date. Of course, plaintiff will have to supply medical evidence to substantiate her claims, and defendants are free to raise this issue again at the summary judgment stage.

**Conclusion**

For the reasons stated above, the court will grant the defendants' motion as it relates to plaintiff's claims against the individual defendants in their official capacities and to the County on plaintiff's intentional infliction of emotional distress claim. The court will deny defendants' motion as it relates to plaintiff's claim for intentional infliction of emotional distress against the individual defendants. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TINA FRANK, | : | No. 3:09cv596 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| BRIAN W. SMITH, | : | |
| ANTHONY HERZOG, | : | |
| WEDELL KAY, | : | |
| WAYNE COUNTY, | : | |
| CRAIG CHALMERS, and | : | |
| MILO HAMBY, | : | |
| Defendants | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this 29th day of December 2009, the defendants' motion to dismiss the complaint (Doc. 21) is hereby **GRANTED** in part and **DENIED** in part. The motion is granted with respect to plaintiff's claims against the individual defendants in their official capacities and against Wayne County with respect to plaintiff's claim for intentional infliction of emotional distress. The motion is denied with respect to plaintiff's claim for intentional infliction of emotional distress against the individual defendants.

                                                               **BY THE COURT:**

                                                               **s/ James M. Munley**
                                                               **JUDGE JAMES M. MUNLEY**
                                                               **United States District Court**